561 P.2d 1238

**The STATE of Arizona, Appellee,**

v.

**Tony MUNOZ, Jr., Appellant.**

**No. 2 CA–CR 856.**

Court of Appeals of Arizona,
Division 2.

Dec. 30, 1976.

OPINION

HOWARD, Chief Judge.

Appellant appeals his conviction for assault with intent to commit rape. The facts viewed in the light most favorable to upholding the verdict, *State v. Trotter*, 110 Ariz. 61, 514 P.2d 1249 (1973) are as follows.

On the evening of October 26, 1975, the victim, age 16, was spending the night with her mother's permission at the home of her cousin Steve Hernandez and his wife, Ernestina (Ernie). Appellant, age 24, who was a friend of Steve and Ernie, visited the Hernandez home about 10:00 p. m. Steve, Ernie, appellant and the victim sat around watching television. Appellant was eating tamales and drinking beer. After approximately half an hour, Ernie went to bed and Steve followed her a short time later. The victim and appellant stayed up watching television and the victim began taking sips from appellant's beer. When appellant ran out of beer, he decided to go out to buy more and asked the victim to come along. The victim, however, wanted Steve's permission before leaving. Appellant went to the Hernandez bedroom and asked if the victim could accompany him to the store. According to Steve's testimony, he said no. Appellant, however told the victim that Steve had given permission for her to go.

Appellant and the victim drove to a U-Totem Market in appellant's van. After buying a six-pack of beer, appellant drove to an area described as the "egg farm" where he parked the van. According to the victim's testimony, they drank some beer and talked for awhile. Then appellant told her to go to the back of the van, but she said she didn't want to. Appellant continued to ask her and when she refused, he dragged her into the back. Appellant then started taking off the victim's clothes. She resisted but he succeeded in removing her Levis and panties. Appellant thereupon removed his own pants and shorts, got on top of the victim, held her hands back and she felt something penetrate and hurt her.

The arrival of a car interrupted appellant. In the car were the victim's mother

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Thomas G. Bakker, Asst. Attys. Gen., Phoenix, for appellee.

Robert S. Martinez and Severiano A. Rodarte, Phoenix, for appellant.

and brother, Steve, Ernie, and Sally Trevino, appellant's former girlfriend. After appellant and the victim left the Hernandez' house, Steve had awakened and found they were gone. After looking for the victim in the neighborhood without success, Steve and Ernie finally went to the victim's home and told her mother what had happened. The three of them continued to search and eventually went to the police station to report the victim missing. They then talked to the victim's brother and Sally Trevino. Sally Trevino suggested they might find appellant and the victim at the place where she used to park with appellant, and she drove with them to the "egg farm".

They arrived at approximately 12:30 or 1:00 a. m. The victim's mother ran to the van and opened the door on the passenger side. She observed appellant and the victim naked from the waist down. The victim came out of the van and said "Mom, I didn't want to come." The victim's mother than told appellant, "I will nail you for this. You will pay and pay dearly".

The victim got in the car and they drove to Pinal General Hospital where she was examined by Dr. F. H. Buckmaster. The doctor testified that he found bruises in the right mid-back, the right breast, and her inner thighs and three small lacerations at the vaginal orifice. The doctor also testified that the hymen ring was small and he could not conclusively state whether the victim's vagina had been penetrated by a penis. He did, however, state that the lacerations at the vaginal orifice could have been caused by the penetration of a penis.

Appellant was indicted and tried on a charge of rape in violation of A.R.S. § 13–611(A). The jury found him not guilty of forcible rape and statutory rape, but found him guilty of the lesser offense of assault with intent to commit rape. Before trial, appellant had admitted for purposes of sentencing that he had previously been convicted of involuntary manslaughter. The court therefore sentenced him to a term of not less than ten years nor more than ten years and one day in the Arizona State Prison.

Appellant raises three questions on appeal: (1) whether the evidence was sufficient to support a conviction for assault with intent to commit rape; (2) whether the trial court committed fundamental error in failing to instruct the jury that the charge of assault with intent to commit rape requires an intent to commit forcible rape and (3) whether the sentence was excessive.

Because the second question indicates some confusion as to the basic nature of the offense of which appellant was convicted, we will address that issue first. Appellant argues that there is no crime of assault with intent to commit second degree or statutory rape and that the trial court's failure to so instruct the jury constituted fundamental error. The Arizona case law and the clear weight of authority, however, refute appellant's contention.

▪ Appellant relies in part on *State v. Cipriano*, 24 Ariz.App. 478, 539 P.2d 952 (1975) where this court stated that assault with intent to commit rape required proof of (1) an assault, (2) an intent to have carnal knowledge of the female and (3) a purpose to carry this intent into effect by means of force and against the will of the female. *Cipriano*, however, dealt with a victim above the statutory age and thus envisioned a victim capable of consenting. When the victim is a minor, the State need not show that the attempt was forcible and against her will. The rationale is logical and well-established: since a girl under the age of consent is incompetent to consent to the act of intercourse, she cannot consent to an assault where the intent was to have sexual intercourse. *Callaghan v. State*, 17 Ariz. 529, 155 P. 308 (1916). See also *Allison v. United States*, 133 U.S.App.D.C. 159, 409 F.2d 445 (1969); *State v. McDaniel*, 204 N.W.2d 627 (Iowa 1973); *Cunningham v. State*, 85 Ga.App. 216, 68 S.E.2d 614 (1952); *State v. Bowden*, 154 Fla. 511, 18 So.2d 478 (1944); *Fannin v. State*, 65 Okl.Cr. 444, 88 P.2d 671 (1939); *State v. Smith*, 90 Utah 482, 62 P.2d 1110 (1936); 75 C.J.S. Rape § 28; 65 Am.Jur. Rape § 23; Annot. 81

A.L.R. 599. Furthermore, the fact that our rape statute was amended so as to divide the crime of rape into degrees does not, as appellant contends, affect the law as to assault with intent to commit rape. The new statute merely states the different circumstances under which sexual intercourse constitutes the crime of rape and does not set forth separate and distinct crimes. *State v. Klem,* 108 Ariz. 349, 498 P.2d 216 (1972).

The early case of *Callaghan v. State,* supra, describes the elements of an assault with intent to commit rape where a minor is the victim:

"If sexual intercourse is attempted with a female under 18 years of age, no matter whether it be with her consent or without it, the felonious intent is present on the part of the male. If such an attempt is accompanied by some act 'that can be fairly, according to human experience, characterized as having an immediate relation to and preparation or the bringing about of a condition under which intercourse could be accomplished,' it is an assault with intent to commit rape. The felonious intent existing, there may not be a touching of the person of the female." 17 Ariz. at 532, 155 P. at 310.

To summarize then, the State must prove the victim's minority, an assault, an intent to have sexual intercourse and some overt act toward accomplishing that intent. Therefore, the trial court in this case clearly could not have instructed the jury that an intent to commit forcible rape was a necessary element of the crime since that simply is not the law.

■ ■ Appellant also argues that the evidence was insufficient to support his conviction. He specifically asserts that there is no evidence of an assault. When the sufficiency of the evidence is questioned on appeal in a criminal case, the appellate court decides whether there is substantial evidence to support the verdict. *State v. Reese,* 111 Ariz. 249, 527 P.2d 508 (1974). However, this court will not substitute its judgment on the facts for that of the jury

unless "there is a complete lack of evidence to support the facts that must be found to sustain the verdict." *State v. Rhodes,* 112 Ariz. 500, 504, 543 P.2d 1129, 1133 (1976).

■ A.R.S. § 13–241(A) defines an assault as "an unlawful attempt, coupled with a present ability, to commit a physical injury on the person of another." In *State v. Dillon,* 26 Ariz.App. 220, 547 P.2d 491 (1976) this court explained that the term "physical injury" is synonymous with "physical force" and that it includes any wrongful act against the person of another. The transcript clearly reveals substantial evidence from which the jury could have found there was an assault. The victim testified that appellant dragged her into the back of the van, that he removed her clothing without her consent, that he held her down and hurt her by penetration of her "private parts". Furthermore, Dr. Buckmaster testified as to bruises on her body and lacerations at the entrance of the vagina. In any event, a conviction may be based on the uncorroborated testimony of the victim unless the story is physically impossible or so incredible that no reasonable person could believe it. *State v. Williams,* 111 Ariz. 175, 526 P.2d 714 (1974). Although the appellant's and victim's version of the events are contradictory, the jury believed the victim, and her testimony alone provides sufficient evidence to support appellant's conviction.

■ Appellant's final contention is that the sentence was excessive. Because of appellant's prior conviction of involuntary manslaughter, the minimum sentence which the court could have imposed was ten years. See A.R.S. § 13–1649(A)(1). Although probation was an alternative, in light of appellant's extended history of antisocial behavior, we cannot say that the trial court abused its discretion by sentencing appellant to a ten-year prison term. *State v. Noles,* 113 Ariz. 78, 546 P.2d 814 (1976); *State v. Cipriano,* supra.

The judgment of conviction and sentence are affirmed.

HATHAWAY and RICHMOND, JJ., concur.