243 P.3d 1041

**The STATE of Arizona, Appellee,**

v.

**Raul HERRERA III, Appellant.**

**No. 2 CA–CR 2008–0273.**

Court of Appeals of Arizona,
Division 2, Department B.

Dec. 27, 2010.

As Amended on Reconsideration
Feb. 10, 2011.

Terry Goddard, Arizona Attorney General By Kent E. Cattani and David A. Sullivan, Tucson, Attorneys for Appellee.

Robert Hirsh, Pima County Public Defender By Frank P. Leto, Tucson, Attorneys for Appellant.

## OPINION

KELLY, Judge.

¶1 In 2008, appellant Raul Herrera was convicted after a jury trial of two counts of sexual conduct with a minor under fifteen, one count of sexual exploitation of a minor under fifteen, and one count of kidnapping. Herrera argues the trial court erred in admitting evidence of other acts and in precluding evidence of the victim's prior sexual history. He also contends the testimony of the state's expert, Wendy Dutton, improperly invaded the province of the jury. For the following reasons, we affirm.

## Background

¶2 "We construe the evidence in the light most favorable to sustaining the verdict[s], and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, ¶12, 967 P.2d 106, 111–12 (1998). In 2007, Herrera's stepdaughter told a friend she was being sexually abused by her stepfather. She then reported the abuse to her school guidance counselor. The state charged Herrera with three counts of sexual conduct with a minor under fifteen and two counts of sexual exploitation of a minor under fifteen. The indictment alleged that these counts were dangerous crimes against children. Herrera also was charged with one count of kidnapping.[1]

¶3 The three sexual conduct charges alleged Herrera had "ha[d] the victim masturbate him," had "plac[ed] his penis inside the victim's vulva," and "ha[d] the victim place her mouth on his penis." The sexual exploitation charges alleged Herrera had possessed two digital photographs of his stepdaughter "engaging in actual or simulated oral sex." And, the kidnapping count alleged Herrera had kidnapped the victim "with the intent to inflict . . . physical injury or a sexual offense on her."

¶4 Herrera was convicted, as specified above, of four of the six counts. The jury found him not guilty of the two remaining counts. The trial court imposed presumptive, consecutive prison terms totaling 60.5 years. This appeal followed. Although Herrera's opening brief includes a lengthy recitation of the entire case history,[2] he raises three specific contentions on appeal. We address these in turn.

## Discussion

### I. Other–Acts Evidence

¶5 Before trial, in compliance with Rule 15.1(b)(7), Ariz. R.Crim. P., the state filed a notice disclosing its intent to introduce at trial various uncharged acts allegedly perpetrated by Herrera. This evidence included two portions of a videotape taken by Herrera that displayed the victim with her breasts exposed. In one portion, Herrera was instructing her to jump up and down; in the other she was making a sexually explicit statement. The evidence also included statements made by the victim to law enforcement officers describing uncharged acts perpetrated by Herrera before and during the time period within which the indictment alleged the charged offenses had been committed.

¶6 Herrera opposed the admission of this evidence on the following grounds: there was insufficient evidence establishing he had committed the uncharged acts; the evidence was improper character evidence under Rule 404, Ariz. R. Evid., and was not admissible under the exception created by Rule 404(c) because the acts did not show he had a character trait giving rise to an aberrant sexual propensity; and, the danger of unfair prejudice out-

1. Herrera originally was charged under two separate indictments that later were consolidated for trial.

2. Herrera's counsel requested and was granted permission to exceed this court's maximum word count in his opening brief. But we see no reason the brief could not have been prepared in compliance with this court's standards by eliminating references to facts and procedural matters that are irrelevant to the issues on appeal.

weighed the evidence's probative value. The state later disclosed its intent to introduce a videotape made by Herrera that depicted "the victim's genitalia." Herrera objected to this evidence as well, incorporating his previous objections to other-acts evidence, and arguing there was inadequate foundation and the evidence should at least be "edited such that only those segments identified by the alleged victim as being herself are view[ed] by the jury."

¶7 After a hearing, Judge Cruikshank ruled that the two portions of videotape depicting the victim's breasts were admissible because the evidence was intrinsic to the charged offenses, and that the court would admit the evidence as long as the state was able to introduce sufficient foundation evidence establishing that the person depicted in the videotape portions was the victim. Judge Cruikshank ruled that the victim's statements to law enforcement officers about other acts also was intrinsic to the charged offense and, consequently, admissible as well. The judge added that because the other-act evidence was admissible under the intrinsic-evidence principle, he was not required to analyze the admissibility of the proffered evidence under Rule 404(b) or Rule 404(c).

¶8 Subsequently, Judge Campoy[3] held a hearing regarding the admissibility of the images of genitalia, which were derived from the videotape. He ruled that one image was admissible because the victim had identified herself as the person portrayed in that image but that the full videotape and another image were inadmissible due to inadequate foundation. Defense counsel then asked Judge Campoy to reconsider Judge Cruikshank's previous rulings on the other-acts evidence, claiming that some of the other acts were not intrinsic to the charged offenses because they had occurred when the victim and Herrera had lived in Yuma (hereinafter "Yuma Acts"), before the time during which the charged offenses allegedly had been committed. Although Judge Campoy refused to reconsider Judge Cruikshank's previous rulings, he commented, nevertheless, that the challenged evidence "would be part and parcel and intrinsic to the charges."

¶9 At trial, Herrera objected when the prosecutor asked the victim where the first sexual contact between her and Herrera had taken place, arguing the evidence was irrelevant. Judge Cahill overruled the objection and the victim responded, "Yuma." Herrera again objected and, following a bench conference, the court stated it "ha[d] independently looked at the arguments of counsel" and overruled Herrera's objection to evidence relating to the Yuma Acts.

¶10 "We review the [trial] court's decision to admit other acts evidence for [an] abuse of discretion." *State v. Villalobos*, 225 Ariz. 74, ¶18, 235 P.3d 227, 233 (2010). Similarly, a trial court's decision to admit evidence and overrule a relevancy objection is reviewed for an abuse of discretion. *See State v. Wood*, 180 Ariz. 53, 61–62, 881 P.2d 1158, 1166–67 (1994). A ruling is an abuse of discretion when "the reasons given by the court . . . are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Chapple*, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983).

¶11 Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In other words, other-act evidence is generally inadmissible for the purpose of " 'show[ing] that the defendant is a bad person or has a propensity for committing crimes.' " *State v. Hargrave*, 225 Ariz. 1, ¶10, 234 P.3d 569, 576 (2010), *quoting State v. McCall*, 139 Ariz. 147, 152, 677 P.2d 920, 925 (1983). But the rule also provides that evidence of other acts may be offered "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b); *see also State v. Dickens*, 187 Ariz. 1, 19, 926 P.2d 468, 486 (1996). Additionally, in cases involving charges of sexual misconduct, other-acts evidence is admissible under Rule 404(c) to

---

**3.** The case was assigned to Judge Campoy after Judge Cruikshank recused himself Due to sched-

uling issues, Judge Cahill presided at trial.

prove the "defendant ha[s] a character trait giving rise to an aberrant sexual propensity."

¶ 12 Evidence of other acts also may be admitted if the evidence is intrinsic to the charged offense. This ground for admitting other-acts evidence is independent of, and without regard to, Rule 404, the exceptions the rule provides, and an analysis under the rule. *See State v. Nordstrom*, 200 Ariz. 229, ¶ 56, 25 P.3d 717, 736 (2001). Evidence is intrinsic "when 'evidence of the other act and evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged.' " *Id., quoting Dickens*, 187 Ariz. at 19 n. 7, 926 P.2d at 486 n. 7. Thus, Rule 404(b) is not implicated when evidence is intrinsic to the charged offense because the probative value of such evidence does not depend solely on an inference of criminal propensity. *See Dickens*, 187 Ariz. at 19 n. 7, 926 P.2d at 486 n. 7; *State v. Baldenegro*, 188 Ariz. 10, 15–16, 932 P.2d 275, 280–81 (App. 1996); *see also United States v. Soliman*, 813 F.2d 277, 279 (9th Cir.1987) ("Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ["other"] act and the evidence concerning the crime charged are inextricably intertwined.' "), quoting *United States v. Aleman*, 592 F.2d 881, 885 (5th Cir.1979).

¶ 13 Herrera argues the other-acts evidence was not intrinsic to the crimes charged. He asserts the trial court should have conducted an analysis under Rule 404 and had it done so, the evidence would not have been admissible under any of the exceptions to the general rule precluding admission of character evidence. Relying, in part, on *State v. Garcia*, he maintains that because the Yuma Acts purportedly were committed before the charged offenses, they were not intrinsic, but were, as the court in *Garcia* described the other acts in that case, "discrete offenses, identical to but occurring at different times than the ones charged." 200 Ariz. 471, ¶ 33, 28 P.3d 327, 333 (App.2001). He also argues that the acts purportedly committed within the time frame of the charged offenses are "so vague and uncertain they cannot be considered 'intrinsic.' "

¶ 14 The trial court did not abuse its discretion in finding the evidence intrinsic to the charged offenses. The other-act evidence related to acts perpetrated by Herrera against the same victim. In a sexual offense case involving a minor victim, we previously have stated that evidence of prior acts against the same minor victim was "undoubtedly . . . admissible," either as propensity evidence or "because [it was] so much part and parcel of the criminal" acts charged. *State v. Marshall*, 197 Ariz. 496, ¶ 13, 4 P.3d 1039, 1043 (App.2000). Herrera has mischaracterized our holding in *Garcia* to mean that "separate and discreet [sic] acts occurring on different occasions, even involving the same parties, are [always] subject to Rule 404(c) and are [never] intrinsic to the crime charged." Rather, in *Garcia*, we stated only that the theory that evidence is intrinsic does not "relieve[ ] the need for careful examination of the evidence." 200 Ariz. 471, ¶ 33, 28 P.3d at 333.

¶ 15 Evidence is not only intrinsic to the charged offense when it is "inextricably intertwined" with the evidence establishing the charged offense, but when it is necessary "to prove the complete story of the crime." *State v. Collins*, 111 Ariz. 303, 305, 528 P.2d 829, 831 (1974). Some of the other-act evidence can be so characterized. For example, the evidence that Herrera had made the victim masturbate him when they lived in Yuma explained to the jury that Herrera's sexual conduct with the victim had begun by the time she was thirteen and was "a necessary preliminary" to the criminal conduct alleged in the indictment. *Nordstrom*, 200 Ariz. 229, ¶ 56, 25 P.3d at 736.

¶ 16 The evidence of the Yuma Acts also helped establish the time frame within which the charged offenses were committed. The indictment alleged that Herrera had committed three counts of sexual conduct with a minor during the year between the victim's fourteenth birthday and the day before she turned fifteen. The victim had turned fourteen shortly after the family had relocated to

Tucson[4] from Yuma. The evidence was intrinsic to the charged offenses because the acts were precursors to the charged offenses and helped establish when they were committed. None of the judges abused their discretion in admitting evidence of these and other instances of sexual conduct between Herrera and the victim.

¶ 17 Nor did Judge Cahill abuse his discretion when he admitted the evidence about the Yuma Acts over Herrera's relevancy objection. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401. The evidence was relevant for a variety of reasons. It helped explain that the victim's young age when Herrera first started engaging in sexual acts with her may have been a factor in her delayed disclosure of the abuse. As the state's expert testified, "many child sexual-abuse victims never disclose, or at least don't disclose the abuse until [they are] in adulthood." And, the victim testified that after she had told Herrera she "didn't think it was right" when he first asked her to masturbate him, he had responded that "if no one found out, ... it was okay." This statement rebutted Herrera's defense that the victim had reported the acts only when she was having difficulties in school or with her mother and that they were fabrications. Finally, although the Yuma Acts occurred before the offenses charged in the indictment, they were not excessively remote in time so as to render them separate and distinct and no longer intrinsic or relevant to the charged offenses. The victim testified the family had lived in Yuma when she was in the sixth to eighth grades, and had moved back to Tucson when she was still in the eighth grade.

¶ 18 Even if we were to agree with Herrera that because the Yuma Acts occurred "at different times than the [crimes] charged," the court erred in admitting the evidence as intrinsic and instead should have evaluated its admissibility under Rule 404(c),

we conclude the evidence also was admissible under that rule, rendering harmless any error in its admission as intrinsic. *See State v. Andriano*, 215 Ariz. 497, ¶ 22, 161 P.3d 540, 545–46 (2007) ("Even though not intrinsic to the crime charged, 'other act' evidence may nonetheless be admissible" under a different evidentiary rule "as long as its probative value is not substantially outweighed by the danger of unfair prejudice.").

¶ 19 Rule 404(c), provides that when a defendant has been charged with a sexual offense, "evidence of other crimes, wrongs, or acts may be admitted ... if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." As the court stated in *Garcia*, " 'evidence of a prior similar sex offense committed against the same child is admissible to show the defendant's lewd disposition or unnatural attitude toward the particular victim.' " 200 Ariz. 471, ¶ 29, 28 P.3d at 332, *quoting State v. Garner*, 116 Ariz. 443, 447, 569 P.2d 1341, 1345 (1977).

¶ 20 The victim identified herself in the videotape clips depicting her breasts and in the derived images. She testified that the defendant had taken similar pictures of her in the living room and hallway of their home in Tucson. She and her mother also identified Herrera's voice directing her to jump up and down in a portion of the videotape. This evidence was probative to show that Herrera was the perpetrator and not someone else as he suggested, that he had a disposition that was lewd and unnatural toward the victim, and that this disposition persisted over time. And, contrary to Herrera's contention, the victim's testimony was sufficient to establish by clear and convincing evidence that the acts had occurred. *See State v. Terrazas*, 189 Ariz. 580, 582, 944 P.2d 1194, 1196 (1997) ("[F]or prior bad acts to be admissible in a criminal case, the profferer must prove by clear and convincing evidence that the prior bad acts were committed and that the defendant committed the acts."); *see also State v. Munoz*, 114 Ariz. 466, 469, 561 P.2d 1238,

4. We presume the references in the record to the family home in Vail refer to the family's home after they moved back to Tucson. For the sake of clarity, we refer only to Tucson in our discussion.

1241 (App.1977) (in rape of minor case "a conviction may be based on the uncorroborated testimony of the victim unless the story is physically impossible or so incredible that no reasonable person could believe it"); *State v. Haston*, 64 Ariz. 72, 77, 166 P.2d 141, 144 (1946) (uncorroborated testimony of victim sufficient to sustain conviction of guilt beyond a reasonable doubt). The evidence was, therefore, admissible under Rule 404(c).

¶ 21 Herrera next argues that even if the other-acts evidence was intrinsic to the charged offenses, it was inadmissible nevertheless because the court failed to make a "specific determination" regarding unfair prejudice under Rule 403, Ariz. R. Evid. The rule states that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ariz. R. Evid. 403. Although Herrera is correct that Rule 404(c)(1)(D) requires a trial court to make specific findings when other-acts evidence is offered to prove aberrant sexual propensity, he has offered no authority for his contention that such express findings are required when a court conducts an implicit balancing analysis under Rule 403 when deciding whether to admit the evidence on the ground it is intrinsic to the charged offense. The rule does not contain such a provision. *See State v. Beasley*, 205 Ariz. 334, ¶ 15, 70 P.3d 463, 466 (App.2003). And, the cases Herrera cites for the proposition that "failure to perform any kind of [Rule] 403 analysis and make appropriate findings is reversible error," are inapposite. Both *State v. Anthony*, 218 Ariz. 439, 189 P.3d 366 (2008), and *State v. Vigil*, 195 Ariz. 189, 986 P.2d 222 (App.1999), concerned the admission of other-acts evidence under Rule 404(b), not evidence admitted on the ground that it is intrinsic to the charged offenses. And although both cases specify the findings the court must make and conclusions it must reach before admitting other-act evidence under Rule 404(b), neither specifically requires the court to make express findings, either in writing or orally on the record, relating to Rule 403.

¶ 22 Moreover, the record does not support Herrera's contention that the court failed to consider whether the evidence was unduly prejudicial. *See State v. Moody*, 208 Ariz. 424, ¶ 81, 94 P.3d 1119, 1144 (2004) ("Although the trial court's [decision] ... included no specific findings, we presume that the court was aware of the relevant law and applied it correctly...."). Because Herrera objected to the other-acts evidence on the basis of unfair prejudice, the issue was before the trial court and we can assume it correctly identified and considered the issue. *See id.; see also Beasley*, 205 Ariz. 334, ¶ 15, 70 P.3d at 466. And, Herrera has not provided a citation to any place in the record where he asked the court to make express findings under Rule 403. *See Garcia*, 200 Ariz. 471, ¶ 7, 28 P.3d at 329; *see also* Ariz. R.Crim. P. 31.13(c)(1)(iv), (vi). Furthermore, such findings are not necessary when the basis for the court's ruling appears in the record. *See State v. Williams*, 144 Ariz. 433, 439, 698 P.2d 678, 684 (1985). Here, the record supports the trial court's ruling. "The state presented evidence of probativeness ... and the defendant failed to provide adequate evidence of prejudice to overcome the state's showing." *Id.*

¶ 23 Finally, Herrera has not persuaded us the evidence was unfairly prejudicial. The jury did not find Herrera guilty of all charges, which suggests the prior acts had not so affected the jury that the guilty verdicts it did render were the result of "emotion, sympathy or horror." *State v. Schurz*, 176 Ariz. 46, 52, 859 P.2d 156, 162 (1993); *see also United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir.1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir.2000); *Garcia*, 200 Ariz. 471, ¶ 42, 28 P.3d at 334. The evidence of Herrera's prior sexual abuse of the victim was probative, and the probative value of the evidence was not substantially outweighed by the potential for unfair prejudice, particularly given the nature of this case and the evidence presented. *See Harrison*, 195 Ariz. 28, ¶ 22, 985 P.2d at 518. We therefore

cannot say the trial court erred when it implicitly so concluded.

■ ¶ 24 The last class of other-acts evidence Herrera challenges is the testimony of Detective John Mawhinney, a computer forensic examiner, about photographic images found on the hard drive of Herrera's personal computer.[5] Herrera did not object to Mawhinney's general testimony regarding the computer hard drives taken from Herrera's home pursuant to a search warrant. When Mawhinney testified that one hard drive removed from Herrera's home computer contained "more than—thousands [sic]" of photographic images, Herrera objected solely on the ground that the question called for speculation. On cross-examination, Herrera's counsel asked Mawhinney if "around 17,500" photographs of naked women had been found on the hard drive. Additionally, Herrera did not object when the state asked on redirect whether those 17,500 photographs included "hundreds, if not a thousand, images of female [genitalia]."

¶ 25 Because the defense first introduced the pornographic nature of the photographs, Herrera invited any error and has no basis for challenging it.[6] *State v. Lindsey,* 149 Ariz. 472, 477, 720 P.2d 73, 78 (1986) (" '[A] party cannot complain about a result he caused.' "), *quoting* M. Udall & J. Livermore, Law of Evidence § 11 at 11 (2d ed. 1982). Likewise, when evidence is offered in response or retaliation to evidence offered by the opposing party, in general error will be deemed waived. *Id.* Here, the state described the photographs only after defense counsel had asked questions about them. Because any error was invited, we do not address whether it was fundamental in light of defendant's failure to object. *State v. Logan,* 200 Ariz. 564, ¶ 9, 30 P.3d 631, 632 (2001) ("If an error is invited, we do not consider whether the alleged error is fundamental....").

## II. Propensity Instruction

■ ¶ 26 Next, Herrera argues that if the evidence was intrinsic "and not subject to the protections of Rule 404(c), the State was not entitled to the propensity instruction given by the trial judge." He maintains "[t]he jury was not entitled to consider such evidence as character trait/propensity evidence without the trial judge making the appropriate findings under Rule 404(c)." Herrera is correct that the sexual propensity instruction is proper only if the other-acts evidence was admitted as sexual propensity evidence. *See State v. Hargrave,* 225 Ariz. 1, ¶ 23, 234 P.3d 569, 578 (2010). Because Herrera did not object to the instructions, however, we will reverse only if the challenged instruction constituted fundamental, prejudicial error. *See State v. Henderson,* 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005); *see also State v. Simpson,* 217 Ariz. 326, ¶ 12, 173 P.3d 1027, 1029 (App.2007).

■ ¶ 27 The trial court instructed the jury as follows:

If you find that evidence of other acts of sexual misconduct by the defendant has been presented, you may consider such evidence in determining whether Defendant had a character trait that predisposed him to commit the crimes charged.

You may determine that the defendant had a character trait that predisposed him to commit the crimes charged only if you decide that, one, the State has proof [sic] by clear and convincing evidence that Defendant committed these act [sic], and, two, the State has proved by clear and convincing evidence that these facts show Defendant's character predisposed him to commit abnormal or unnatural sexual acts. You may not convict the defendant of the crimes charged simply because you find that the defendant committed the other act or that he had a character trait that predisposed him to commit the crimes charged. Evidence of these acts does not lessen the State's burden to prove Defen-

---

5. The state had not provided separate notice of its intent to introduce this evidence at trial.

6. We disagree with Herrera's contention that the state failed to respond in its answering brief to his assertion of error regarding the hard-drive photographs and thereby conceded error. The answering brief belies this contention. In it the state addressed Herrera's argument that other-acts evidence was inadmissible on the ground that "proffered other-act evidence ... was intrinsic evidence," and stated that "evidence of sexually explicit images found at Appellant's residence was also intrinsic."

dant's guilt beyond a reasonable doubt as to any given charge.

On the record before us, Herrera has not sustained his burden of establishing any error that could be characterized as fundamental. *See State v. Moreno–Medrano*, 218 Ariz. 349, ¶ 16, 185 P.3d 135, 140 (App.2008). To establish fundamental error, the defendant must prove "the error complained of goes to the foundation of his case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial," and that such error resulted in prejudice. *Henderson*, 210 Ariz. 561, ¶¶ 23–26, 115 P.3d at 608. Here, the evidence was otherwise admissible and the instruction did not so affect Herrera's defense that any error could be characterized as fundamental. Nor has Herrera established the requisite prejudice under a fundamental error analysis. *See State v. Edmisten*, 220 Ariz. 517, ¶ 18, 207 P.3d 770, 776 (App.2009) (even if court concludes fundamental error resulted from erroneous instructions, defendant must demonstrate reasonable probability jury would have reached different result but for erroneous instruction).

¶ 28 First, Herrera himself mentioned the evidence as demonstrative of sexually aberrant propensity in his opening statement and closing argument, establishing an attempt to defend against the state's use of the evidence in that manner. Second, as we previously concluded, although the court admitted the evidence as intrinsic, it also was admissible under Rule 404(c). Herrera is not entitled to relief for an instruction that would have been appropriate had the trial court analyzed the issue differently. Finally, the jury was instructed "not to use the prior act evidence as a basis for convicting [Herrera] of the charges." *Hargrave*, 225 Ariz. 1, ¶ 24, 234 P.3d at 578. This admonition thus limited their consideration of the other-acts evidence beyond what would have been permitted had they considered it only because it was intrinsic to the charged offenses. And, as we previously noted, the jury found Herrera not guilty of two of the six charges, indicating he had not been unfairly prejudiced by the instructions. *Cf. Baker*, 10 F.3d at 1387; *Garcia*, 200 Ariz. 471, ¶ 42, 28 P.3d at 334. In sum, Herrera has failed to demonstrate fun-damental, prejudicial error occurred. *See Henderson*, 210 Ariz. 561, ¶ 22, 115 P.3d at 608.

## III. Preclusion of the Victim's Prior Sexual History

¶ 29 Herrera next asserts the trial court erred by precluding him from introducing evidence about the victim's prior sexual history, specifically an allegation that she had engaged in a consensual sexual relationship with a female friend. Additionally, he argues he should have been permitted to introduce evidence that, after she had disclosed Herrera's sexual abuse, the victim had told a friend she had had intercourse with her boyfriend. He argues this evidence was admissible under A.R.S. § 13–1421(A), and that the state "opened the door" to such evidence. Alternatively, Herrera argues § 13–1421 is unconstitutional.

### A. Admissibility under § 13–1421

¶ 30 We review a trial court's decision to preclude evidence under § 13–1421 for an abuse of discretion. *See State v. Gilfillan*, 196 Ariz. 396, ¶ 29, 998 P.2d 1069, 1078 (App. 2000). Section 13–1421, commonly referred to as the "rape-shield law," provides that evidence of specific instances of a victim's prior sexual conduct are admissible only if the judge "finds the evidence is relevant and is material to a fact in issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence." Here, Judges Campoy and Cahill both found the evidence irrelevant and of little or no probative value. We agree.

¶ 31 Relying on *State v. Trotter*, 110 Ariz. 61, 514 P.2d 1249 (1973), and *State v. Roberts*, 139 Ariz. 117, 677 P.2d 280 (App.1983), Herrera argues the victim's sexual history was relevant to her credibility. But, neither case supports his position. In *Roberts*, the issue was the admissibility of expert testimony suggesting a witness might have been unreliable because of a mental deficiency. 139 Ariz. at 123, 677 P.2d at 286. *Trotter* dealt with a prosecutor's comment about witness credibility during closing arguments.

110 Ariz. at 65, 514 P.2d at 1253. Neither case implicated § 13–1421, which dictates the circumstances under which specific instances of a victim's prior sexual conduct may be admitted.

¶ 32 Here, as we previously stated, the trial judges found that the proffered evidence was irrelevant and immaterial to any facts at issue. "The trial court was in the best position to evaluate the evidence and judge the credibility of the witnesses." *Gilfillan,* 196 Ariz. 396, ¶ 33, 998 P.2d at 1078. At a preliminary hearing on the issue, Judge Campoy found "no legal basis or evidentiary relationship between the alleged prior relationship with a same-sex partner and the issue involved in th[e] case." When defense counsel tried to introduce the evidence at trial, arguing that the state had "opened the door," Judge Cahill stated, "it's just wild speculation that any of these acts ... would have any relevance." We find no error in the determinations that Herrera failed to establish that the victim's alleged prior sexual conduct was admissible.

¶ 33 To the extent Herrera argues the state opened the door to impeach the victim, we agree with the trial court that even if "the door is open ... [it does not] mean you have the evidence to go through it." Although § 13–1421(A)(4) provides that one permissible use of the victim's prior sexual history is "impeachment when the prosecutor puts the victim's prior sexual conduct in issue," such evidence still is subject to the statute's basic relevance and probative value requirements. § 13–1421(A). Judge Cahill noted that the defendant "ha[d] to have something more" to establish a connection between the alleged sexual activity and the crimes charged and that there was "no good-faith basis" to admit the evidence. Additionally, under the facts present here, we are unconvinced that by asking the victim "these things that you told us about that your stepfather did ... [d]id any other person ever do these types of

things to you," the state had opened the door to the victim's prior sexual conduct. Instead, the prosecutor's question apparently addressed Herrera's suggestion that his and his wife's "swinging partners" could have been responsible for criminal sexual conduct directed toward the victim.[7]

**B. Constitutionality of § 13–1421**

¶ 34 Herrera contends § 13–1421 is unconstitutional because it violates his right to confront and cross-examine witnesses, violates the constitutionally mandated separation of powers between the legislature and courts, and infringes upon our supreme court's rulemaking powers. Herrera concedes he challenges the constitutionality of the statute for the first time on appeal, but asserts the issue is of such importance that we should address it. We may consider constitutional arguments raised for the first time on appeal. *See Gilfillan,* 196 Ariz. 396, n. 4, 998 P.2d at 1074 n. 4. However, the arguments Herrera raises were considered and rejected in *Gilfillan,* and we see no reason to deviate from that decision. *See State v. Benenati,* 203 Ariz. 235, ¶ 7, 52 P.3d 804, 806 (App.2002).

**IV. Expert Witness Testimony**

¶ 35 Herrera's final argument is that the state's expert witness improperly invaded the province of the jury and improperly vouched for the victim, denying him a fair trial. Wendy Dutton testified for the state as an expert on the behavior and characteristics of child sexual abuse victims. On direct examination, Dutton stated that false allegations occur most commonly when the purported victims are either "younger children whose parents are involved in a high-conflict divorce or custody dispute" or "adolescent females." For adolescent females, Dutton testified that false allegations are usually driven by an "ulterior motive or secondary gain." On cross-examination, defense coun-

---

7. In opening statement, Herrera's counsel stated, "with all the swinging activity going on in that house, and people so wigged out and high on drugs and passing out in God knows what part of the house, it could have been anyone grabbing a camera and taking photographs." The victim's mother testified that throughout their marriage, she and Herrera engaged in sexual activity with other partners, men and women, in their home and Herrera was always "filming and directing" the activity. Although the victim testified Herrera told her about his "swinging" activities, she also testified she never was present when they occurred.

sel focused on rates of false allegations among adolescent females asking, "Now, you had mentioned earlier that teenage girls are the most likely group of children to make false allegations of sexual abuse. Did I say that correctly?" Dutton disagreed with this characterization of her prior testimony.

¶ 36 Before the witness was excused, the jury was permitted to submit proposed questions. Neither party objected to any of the proposed questions. The court then asked Dutton, "What percentage of allegations later prove to be false?" and, "What are the statistics of stepparents abusing stepchildren?" During recross-examination, Dutton concurred with defense counsel's statements that "[t]here may be any number of allegations that are never actually proven [false or] otherwise." Herrera did not object to Dutton's testimony at any point during direct or cross-examination. Even though Dutton herself stated, "I'm not sure I'm allowed to answer that question," Herrera did not object to the juror questions or the answers provided.

¶ 37 The state concedes that testimony about the specific percentage of false sexual abuse allegations and the most common type of perpetrators of sexual abuse was error under the standard established in *State v. Lindsey*, 149 Ariz. 472, 475, 720 P.2d 73, 76 (1986) (courts should not admit expert testimony related to credibility of "witnesses of the type under consideration"). But, it argues, Herrera's failure to object to the testimony constituted invited error. Because failure to object alone does not invite error, we reject this argument. *See State v. Lucero*, 223 Ariz. 129, ¶ 22, 220 P.3d 249, 256 (App.2009).

¶ 38 By failing to object below, however, Herrera has forfeited the right to seek relief for all but fundamental, prejudicial error. *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607. Although we will not ignore fundamental error when we see it, *State v. Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d 641, 650 (App.2007), Herrera must show "both that fundamental error exists and that the error in his case caused him prejudice," *Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d at 607. Herrera relies on *Lindsey* for the prop-

osition that Dutton's testimony denied him his right to a fair trial. The expert witness in *Lindsey* had testified "[there was] a preponderance of the evidence" the victim was telling the truth. 149 Ariz. at 477, 720 P.2d at 78. Our supreme court disapproved, holding that "trial courts should not admit direct expert testimony that quantifies the probabilities of the credibility of another witness." *Id.* at 475, 720 P.2d at 76. This includes experts "giv[ing] their opinion of the accuracy, reliability or credibility of a particular witness in the case being tried" or "witnesses of the type under consideration." *Id.* None of Dutton's testimony dealt with the veracity of this particular victim. In response to the juror questions, however, she testified that stepfathers are often the perpetrators and that "false allegations occur less than [ten] percent of the time," which did quantify the credibility of "witnesses of the type under consideration." *Id.* Although in *Lindsey* the court found similar expert testimony to be prejudicial, the case before us is distinguishable. Unlike the expert in *Lindsey,* Dutton testified she had no knowledge of the particular facts and circumstances of the case and had not met the victim. And, Dutton acknowledged that children lie about sexual abuse and that they sometimes lie for secondary gain reasons, which was the defense presented here. Thus, viewed in its entirety, the testimony did not tell the jury "who is correct or incorrect, who is lying and who is truthful." *Id.* at 474, 720 P.2d at 75.

¶ 39 As the *Lindsey* court recognized, "testimony ... which falls short of an opinion about the specific witness before the jury ... might not be prejudicial error in a case in which there was ample extrinsic evidence of guilt." 149 Ariz. at 476–77, 720 P.2d at 77–78. Herrera argues that "the evidence of [his] guilt was not overwhelming" and that the case turned solely on the issue of the witness's credibility. We disagree and conclude there was "ample extrinsic evidence of guilt." *Id.* Although there was no medical corroboration of the victim's testimony, the evidence included numerous photographs and videotapes and other witness testimony. Furthermore, Dutton's testimony was not the only information upon which the jury could

rely to assess the victim's credibility. The victim herself provided lengthy and detailed testimony, the credibility of which the jury could determine for itself.

¶ 40 The trial court also properly instructed the jurors they were not bound by any expert opinion and should give an opinion only the weight they believed it deserved. *See State v. LeBlanc,* 186 Ariz. 437, 439, 924 P.2d 441, 443 (jurors presumed to follow instructions). Once again, that Herrera was acquitted on two counts undercuts his argument that the error here meant "defendant could not possibly have received a fair trial." *Henderson,* 210 Ariz. 561, ¶ 19, 115 P.3d at 607; *cf. Garcia,* 200 Ariz. 471, ¶ 42, 28 P.3d at 334. Therefore, although Dutton's testimony about the percentages of false accusations and rate of stepfather perpetrators was improper, Herrera has failed to establish

that her testimony resulted in fundamental, prejudicial error, entitling him to relief. *See Henderson,* 210 Ariz. 561, ¶ 19, 115 P.3d at 607.

## Disposition

¶ 41 The convictions and sentences imposed are affirmed.

CONCURRING: GARYE L. VÁSQUEZ, Presiding Judge, and PETER J. ECKERSTROM, Judge.