IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2008-0273 |
| | ) | DEPARTMENT B |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| RAUL HERRERA III, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause Nos. CR20071585 and CR20071766 (Consolidated)

Honorable Peter J. Cahill, Judge
Honorable Michael Cruikshank, Judge
Honorable Hector Campoy, Judge

AFFIRMED

Thomas C. Horne, Arizona Attorney General
  By Joseph T. Maziarz and David A. Sullivan                              Tucson
                                                          Attorneys for Appellee


Lori J. Lefferts, Pima County Public Defender
  By Frank P. Leto                                                       Tucson
                                                          Attorneys for Appellant

K E L L Y, Judge.

¶1        In 2008, appellant Raul Herrera was convicted after a jury trial of two counts of sexual conduct with a minor under the age of fifteen, one count of sexual

exploitation of a minor under the age of fifteen, and one count of kidnapping. Herrera argues the trial court erred in admitting evidence of other acts and in precluding evidence of the victim's prior sexual history. He also contends the testimony of the state's expert, Wendy Dutton, improperly invaded the province of the jury and therefore constituted fundamental error. For the following reasons, we affirm.

**Background**

¶2 "We construe the evidence in the light most favorable to sustaining the verdict[s], and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, ¶ 12, 967 P.2d 106, 111-12 (1998). In 2007, Herrera's stepdaughter, A.M., told a friend she was being molested by Herrera. A.M. then reported the abuse to her school guidance counselor. The state charged Herrera with three counts of sexual conduct with a minor under the age of fifteen and two counts of sexual exploitation of a minor under the age of fifteen. The indictment alleged that these counts were dangerous crimes against children. Herrera also was charged with one count of kidnapping.[1]

¶3 The three sexual conduct charges alleged Herrera "ha[d] the victim masturbate him," had "plac[ed] his penis inside the victim's vulva," and "ha[d] the victim place her mouth on his penis." The sexual exploitation charges alleged Herrera had possessed two digital photographs of A.M. "engaging in actual or simulated oral sex." And, the kidnapping count alleged Herrera had kidnapped the victim "with the intent to inflict . . . physical injury or a sexual offense on her."

---

[1]Herrera originally was charged in two separate indictments that were consolidated for trial.

2

**¶4**　　　　　Herrera was convicted, as specified above, of four of the six counts. The jury found him not guilty of the other counts. The trial court sentenced Herrera to presumptive, consecutive prison terms totaling 60.5 years. We affirmed the convictions and sentences on appeal, *State v. Herrera*, 226 Ariz. 59, 243 P.3d 1041 (App. 2010), and Herrera filed a petition for review in our supreme court. The supreme court granted review, vacated this court's opinion, and remanded the matter to this court for reconsideration in light of the supreme court's decision in *State v. Ferrero*, 229 Ariz. 239, 274 P.3d 509 (2012). *State v. Herrera*, 230 Ariz. 387, 285 P.3d 308 (2012). We then stayed the appeal and remanded the case to the trial court, directing it to determine whether certain other-act evidence previously admitted as intrinsic to the charged offenses was admissible under Rule 404(c), Ariz. R. Evid. After the court issued its ruling in May 2012, we vacated the stay of the appeal, revested jurisdiction in this court, and permitted the parties to submit supplemental briefs addressing any issues related to the trial court's ruling. We now address Herrera's arguments on appeal.

**Discussion**

**I.　　Other-Acts Evidence**

**¶5**　　　　　Before trial, in compliance with Rule 15.1(b)(7), Ariz. R. Crim. P., the state filed a notice disclosing its intent to introduce at trial various uncharged acts allegedly committed by Herrera. This evidence included two portions of a videotape taken by Herrera that displayed A.M. with her breasts exposed. In one segment, Herrera was directing her to jump up and down; in the other she was making a sexually explicit statement. The state's notice also included evidence of statements made by A.M. to law

enforcement officers describing uncharged acts committed by Herrera before and during the time period within which the indictment alleged the charged offenses had been committed.

¶6        Herrera filed an objection to the admission of this evidence citing the following grounds: (1) there was insufficient evidence establishing he had committed the uncharged acts; (2) the evidence was improper character evidence under Rule 404, Ariz. R. Evid., and was not admissible under the exception created by Rule 404(c) because the acts did not show he had a character trait giving rise to an aberrant sexual propensity; and, (3) the danger of unfair prejudice outweighed the evidence's probative value. The state thereafter disclosed its intent to introduce a videotape made by Herrera that depicted "the victim's genitalia." Herrera also filed an objection to this evidence, incorporating his previous objections to other-acts evidence, and arguing there was inadequate foundation and the evidence should at least be "edited such that only those segments identified by the alleged victim as being herself are view[ed] by the jury."

¶7        After a hearing, Judge Cruikshank ruled that the two portions of videotape depicting A.M.'s exposed breasts[2] were admissible because the evidence was intrinsic to the charged offenses, and would be admitted if the state provided sufficient foundation to establish that A.M. was the person depicted in the videotape segments. Judge Cruikshank ruled that A.M.'s statement to law enforcement officers about other acts also was intrinsic to the charged offenses and therefore admissible. The judge added that because

_____

[2]At trial, these videotape portions were designated as exhibits five and six.

4

the other-act evidence was admissible under the intrinsic-evidence principle, he was not required to analyze the admissibility of the proffered evidence under Rule 404(b) or Rule 404(c).

¶8         Subsequently, Judge Campoy[3] held a hearing regarding the admissibility of the images of genitalia, which were derived from the videotape.  He ruled that one image[4] was admissible because A.M. had identified herself as the person portrayed in that image but that the full videotape and another image were inadmissible due to inadequate foundation.  Defense counsel then asked Judge Campoy to reconsider Judge Cruikshank's previous rulings on any acts that had occurred in Yuma (hereinafter "Yuma Acts"), arguing they were inadmissible because they had occurred before the period covered by the indictment.  Although Judge Campoy refused to reconsider Judge Cruikshank's previous rulings on other-acts evidence, he commented, nevertheless, that the challenged evidence "would be part and parcel and intrinsic to the charges."

¶9         At trial, Herrera objected when the prosecutor asked A.M. where her first sexual contact with Herrera had taken place, arguing the evidence was irrelevant.  Judge Cahill[5] overruled the objection and the victim responded, "Yuma."  Herrera again objected and, following a bench conference, the judge stated he "ha[d] independently looked at the arguments of counsel" and overruled Herrera's objection to evidence relating to the Yuma Acts.

---

[3]The case was assigned to Judge Campoy after Judge Cruikshank recused himself.

[4]At trial, this image was designated as exhibit two.

[5]Judge Cahill presided over the trial.

5

¶10 On remand, the trial court concluded the evidence that previously had been deemed intrinsic to the charged crimes was not intrinsic, but nonetheless was admissible under Rule 404(c). The court made explicit findings to support its determination.

### a. Limited Remand

¶11 In his supplemental brief, Herrera argues it was improper for this court to remand the case to the trial court to determine the admissibility of the other-act evidence under Rule 404(c). He also contends the state "forfeited its opportunity for a post-appeal remand by inviting the error" and the scope of the remand was wrongfully limited.

¶12 Herrera maintains that ordering a limited remand to develop the record "violates *Ferrero*'s direct holding" and that "*Ferrero* does not authorize a new 404(c) hearing." In support of this contention, he relies on the final disposition in *Ferrero*: the supreme court agreed with the court of appeals' decision to remand that case to the trial court for a new trial. 229 Ariz. 239, ¶ 29, 274 P.3d at 515. However, *Ferrero* did not announce a general rule prohibiting a limited remand where evidence has been characterized erroneously as intrinsic. *Id.* And we reject Herrera's suggestion that in *State v. Coghill*, 216 Ariz. 578, 169 P.3d 942 (App. 2007), this court held that when other-act evidence has been admitted erroneously, the case must be remanded for a new trial. Rather, we concluded that the defendant was entitled to a new trial because the trial court had erred when it admitted evidence that was unnecessary, irrelevant, and should have been precluded under Rule 402. *Id.* ¶¶ 22, 33. Under those circumstances, a limited remand would not have developed the record in any way that could have affected the outcome on appeal.

¶13 Whether a case should be remanded to the trial court for a limited evidentiary hearing and ruling is a factual determination that must be made on a case-by-case basis. *See State v. Peterson*, 228 Ariz. 405, ¶¶ 18-19, 267 P.3d 1197, 1202-03 (App. 2011) (concluding limited remand appropriate to determine voluntariness of statements); *see also State v. Jessen*, 134 Ariz. 458, 461, 657 P.2d 871, 874 (1982) (same). Remand may be appropriate when the trial court is in a better position than the appellate court to clarify whether a potential error actually occurred. *See, e.g.*, *State v. Torres*, 208 Ariz. 340, ¶¶ 12-14, 93 P.3d 1056, 1060 (2004) (possibility of structural error not enough to require reversal; remanded for hearing on request to change counsel); *State v. Taylor*, 169 Ariz. 121, 125-26, 817 P.2d 488, 492-93 (1991) (unclear whether evidence excluded improperly as irrelevant or properly under Rule 403; remanded for Rule 403 determination). Remand also is proper when the trial court is found to have based its ruling on an improper standard. *See, e.g.*, *State v. Caraveo*, 222 Ariz. 228, ¶¶ 8, 23, 213 P.3d 377, 379, 382 (App. 2009) (remanding to determine whether search permissible based on different legal theory raised below).

¶14 In this case, because the trial court initially admitted the other-acts evidence as intrinsic, it had not addressed the state's argument that the evidence also was admissible under Rule 404(c). "We are required to affirm a trial court's ruling if legally correct for any reason . . . ." *State v. Boteo-Flores*, 230 Ariz. 551, ¶ 7, 288 P.3d 111, 113 (App. 2012). Therefore, a limited remand was appropriate to permit the trial court to

7

consider the admissibility of the evidence under Rule 404(c) and to allow this court to determine on review whether the admission of the evidence was legally correct.[6]

¶15 Herrera also argues briefly that a limited remand violated his right to equal protection under the United States Constitution because he was subjected to a different procedure than the defendant in *Ferrero*, who was granted a new trial. *See* 229 Ariz. 239, ¶ 29, 274 P.3d at 515. He relies on *Myers v. Ylst*, 897 F.2d 417, 418, 425 (9th Cir. 1990), in which the Ninth Circuit Court of Appeals held that the equal protection rights of the defendant had been violated when the California Supreme Court declined to apply retroactively to his case a decision regarding the right to an impartial jury. The court's decision, however, was based on the principle that equal protection prohibits a state from denying one defendant the retroactive benefit of a substantive ruling but providing it to another defendant. *Id.* at 421. Herrera has cited no authority to support his suggestion that a case-by-case procedural determination of whether to remand a case to the trial court for a limited evidentiary ruling offends a defendant's right to equal protection. Nor has he identified any substantive benefit afforded to other defendants that was not also available in his case. As discussed below, *Ferrero* clarified the appropriate test for

---

[6]In determining the admissibility of Rule 404(c) evidence, the trial court is required to determine whether the "evidence is sufficient to permit the trier of fact to find that the defendant committed the other act." *See* Ariz. R. Evid. 404(c)(1)(A); *State v. Dixon*, 226 Ariz. 545, ¶ 13, 250 P.3d 1174, 1178 (2011). This determination includes an assessment of the victim's credibility. *See State v. Aguilar*, 209 Ariz. 40, ¶¶ 33-35, 97 P.3d 865, 874-75 (2004) (Rule 404(c) findings insufficient where trial court did not hear testimony of victims and did not make credibility determination). Because the trial court had observed the witnesses at Herrera's trial, it was in the best position to assess their credibility. *See State v. Olquin*, 216 Ariz. 250, ¶ 10, 165 P.3d 228, 230 (App. 2007).

intrinsic evidence, 229 Ariz. 239, ¶ 20, 274 P.3d at 513, and that test now has been applied in Herrera's case.

¶16 Herrera further argues the state "forfeited its opportunity for a post-appeal remand." He contends that by arguing below the evidence was intrinsic to the charged crimes, the state invited any error by "invit[ing] the court to bypass evidence prior to trial." However, the doctrine of invited error—which provides that "we will not find reversible error when the party complaining of it invited the error"—does not apply here because the state is not alleging trial error. *State v. Logan*, 200 Ariz. 564, ¶ 9, 30 P.3d 631, 632-33 (2001). This doctrine prevents a party "from 'inject[ing] error in the record and then profit[ing] from it on appeal.'" *Id.* ¶ 11, *quoting State v. Tassler*, 159 Ariz. 183, 185, 765 P.2d 1007, 1009 (App. 1988) (alterations in *Logan*). It therefore applies when the party who invited an error is the same party urging error on appeal. *Id.*; *e.g.*, *State v. Musgrove*, 223 Ariz. 164, ¶¶ 8-9, 221 P.3d 43, 46 (App. 2009) (court would not reverse based on lack of jury instruction when omission requested by defendant); *State v. Fish*, 222 Ariz. 109, ¶¶ 79-80, 213 P.3d 258, 281 (App. 2009) (same). In this case, it is Herrera—not the state—who is urging reversible error on appeal and would benefit from reversal based on admission of the evidence.

¶17 Moreover, the state had argued below the evidence also was admissible pursuant to Rule 404(c) and had offered to have the victim testify about the other acts at the pretrial hearing. The trial court declined to screen the evidence at the pretrial stage, stating it "d[id]n't have to accept the State's viewpoint as to 404(c) evidence" if it concluded the evidence was intrinsic. *See Ferrero*, 229 Ariz. 239, ¶ 22, 274 P.3d at 514

9

(intrinsic evidence not subject to Rule 404(c) screening).  And, even had the state not raised this theory below, this court will affirm a trial court's ruling if the result is correct for any reason.  *Boteo-Flores*, 230 Ariz. 551, ¶ 7, 288 P.3d at 113.

**¶18**      Herrera also maintains the scope of the remand was "wrongfully limited" because it did not address "[the victim]'s testimony that the [charged] acts occurred 'every night' during the indictment period."  He cites no authority restricting this court's authority to limit the scope of its remand.  Moreover, he has failed to support his suggestion that the trial court permitted this testimony on the improper ground that it was intrinsic evidence.  Nothing in the record establishes or even suggests the court considered this testimony during the pretrial proceedings on other-act evidence, nor did Herrera object to it at trial.  Therefore, this court did not err by remanding the matter to the trial court or by limiting the scope of the remand to evidence previously admitted as intrinsic.[7]

### b.  Admissibility

**¶19**      "We review the [trial] court's decision to admit other acts evidence for [an] abuse of discretion."  *State v. Villalobos*, 225 Ariz. 74, ¶ 18, 235 P.3d 227, 233 (2010).  Similarly, we review a trial court's decision to admit evidence over a relevancy objection for an abuse of discretion.  *See State v. Wood*, 180 Ariz. 53, 61-62, 881 P.2d 1158, 1166-67 (1994).  A ruling is an abuse of discretion when "the reasons given by the court . . . are

---

[7]Herrera also argues admission of the other-acts evidence violated his right to due process.  Because he offers no independent argument supporting this claim, we do not address it separately.

clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Chapple*, 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983).

¶20 Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." In other words, other-act evidence generally is inadmissible for the purpose of "'show[ing] that the defendant is a bad person or has a propensity for committing crimes.'" *State v. Hargrave*, 225 Ariz. 1, ¶ 10, 234 P.3d 569, 576 (2010), *quoting State v. McCall*, 139 Ariz. 147, 152, 677 P.2d 920, 925 (1983). But the rule also provides that evidence of other acts may be admissible if it is offered "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid. 404(b).

¶21 Additionally, evidence of acts that are "so closely related to the charged act" may be admitted without regard to Rule 404. *Ferrero*, 229 Ariz. 239, ¶ 20, 274 P.3d at 513. In our previous consideration of the appeal in this case, we concluded the trial court had not abused its discretion by finding that the other-acts evidence challenged by Herrera was admissible because it was intrinsic to the charged acts. In *Ferrero*, however, the supreme court held that "[h]enceforth, evidence is intrinsic in Arizona if it (1) directly proves the charged act, or (2) is performed contemporaneously with and directly facilitates commission of the charged act." 229 Ariz. 239, ¶ 20, 274 P.3d at 513. The court clarified that evidence is not intrinsic merely because it "complete[s] the story." *Id.* After our remand, the trial court reconsidered its previous rulings in light of *Ferrero*, and found the evidence of the uncharged acts—including the videotape segments, derived

11

images, and the Yuma Acts—was not intrinsic to the charged offenses because they were neither part of a "single criminal episode" nor "necessary preliminaries" to the charged crimes and had not been "performed contemporaneously" with the charged crimes.[8] We agree. However, any error in admitting that evidence as intrinsic was harmless because we also agree with the trial court's determination that the evidence was admissible under Rule 404(c). *See Boteo-Flores*, 230 Ariz. 551, ¶ 7, 288 P.3d at 113 (we must uphold ruling if legally correct for any reason).

¶22 Rule 404(c) provides that when a defendant has been charged with a sexual offense, "evidence of other crimes, wrongs, or acts may be admitted . . . if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." To admit evidence under Rule 404(c)(1), a court must find:

> (A) The evidence is sufficient to permit the trier of fact to find that the defendant committed the other act.
>
> (B) The commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged.
>
> (C) The evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403. . . .

---

[8]These findings went beyond the scope of our order, which revested jurisdiction in the trial court "for the limited purpose of ruling on the admissibility, under Rule 404(c), Ariz. R. Evid., of the evidence that previously had been deemed intrinsic."

¶23    The trial court concluded in its minute entry ruling that there was clear and convincing evidence the other acts occurred. It summarized the evidence as follows:

> The Victim's testimony was credible. Her testimony provided sufficient proof that the Yuma Acts occurred just as she testified. . . .
>
> With regard to the three exhibits, the photographs/ videos marked as Exhibits 2, 5, and 6, the testimony was credible that the images were made by Defendant and that the Victim is the subject. The Victim testified that the only person who ever took photos or video of her naked was Defendant. The Victim testified that Exhibit 2 was taken of her at her Vail home. She also testified that she viewed the images and heard recorded voices on the video-recording, marked as Exhibits 5 and 6. Detective Mawhinney testified that the Victim had identified the voice on Exhibit 6 as Defendant's. (Internal citations omitted.)

¶24    Herrera contends the trial court erred by finding there was sufficient evidence from which the jury could have found he committed the Yuma Acts and made the videotapes. As a threshold matter, he argues the trial court erred by considering evidence that had been presented at trial because "appellate courts [must] review pretrial motions based on evidence presented at the hearing and not at trial." He proposes "any . . . evaluation of other act evidence and exhibits must be limited to the evidence presented at the pretrial hearing." We disagree. Herrera bases his argument on the general rule that, when reviewing a trial court's pre-trial ruling on a motion to suppress evidence, we can consider only the evidence that was presented at the suppression hearing. *See State v. Becerra*, 231 Ariz. 200, ¶ 4, 291 P.3d 994, 996 (App. 2013). This is consistent with the general rule that "[a]n appellate court's review is limited to the record before the trial court." *See GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4,

13

795 P.2d 827, 830 (App. 1990). The same rationale does not apply to a trial court's post-trial, retrospective determination of the propriety of a ruling on the admissibility of evidence made either before or during trial, and none of the cases Herrera cites addresses that situation. *See State v. Hausner*, 230 Ariz. 60, ¶¶ 21, 23, 280 P.3d 604, 614 (2012) (whether court erred in admitting statements obtained through wiretap); *State v. Manuel*, 229 Ariz. 1, ¶¶ 10-11, 270 P.3d 828, 831 (2011) (whether court should have suppressed physical evidence obtained during warrantless search); *State v. Flower*, 161 Ariz. 283, 285-86 & n.1, 778 P.2d 1179, 1181-82 & n.1 (1989) (whether court erred in refusing to suppress statement to law enforcement); *State v. Carlson*, 228 Ariz. 343, ¶¶ 1-2, 266 P.3d 369, 370 (App. 2011) (whether court erred in granting motion to suppress statements to law enforcement; appealed prior to trial).

¶25        Here, at this court's direction, the trial court was required to make a post-trial determination whether certain evidence was admissible under Rule 404(c). Given the procedural context in which this determination was to be made, there was no reason to direct the trial court to disregard evidence that had been presented at trial, which Herrera had the opportunity to challenge, and limit the evidence it could consider to that which had been presented before trial. *Cf. United States v. Hernandez-Acuna*, 498 F.3d 942, 945 (9th Cir. 2007) (denial of motion to suppress may be sustained based on trial evidence, where defendant able to examine witnesses). To the contrary, based on the reference in Rule 404(c)(1)(A) to the quantum of evidence available to the trier of fact, it was particularly appropriate for the court to base its post-trial finding on the evidence actually presented to the jury. The court did not err by basing its determination on

14

evidence presented at trial, which we, too, consider in determining the propriety of the court's ruling.

¶26      The trial court found that A.M.'s testimony "was clear and it was convincing evidence that . . . the Yuma Acts[] occurred." We defer to the court's credibility determination. *In re $26,980.00 U.S. Currency*, 199 Ariz. 291, ¶ 10, 18 P.3d 85, 89 (App. 2000) (trial court, not appellate court, assesses credibility). We therefore conclude the court did not abuse its discretion in ruling the evidence was sufficient to allow the jury to find Herrera had committed the Yuma Acts. *See* Rule 404(c)(1)(A). A.M. testified Herrera had caused her to masturbate him "a few times" while the family lived in Yuma. And although Herrera notes that A.M. was unable to specify what time of day the first incident occurred, we agree with the court that her testimony "provided sufficient proof that the Yuma [A]cts occurred." *See State v. Haston*, 64 Ariz. 72, 77, 166 P.2d 141, 144 (1946) (uncorroborated testimony of victim sufficient to sustain conviction of guilt beyond a reasonable doubt); *State v. Munoz*, 114 Ariz. 466, 469, 561 P.2d 1238, 1241 (App. 1976) (in rape of minor case "a conviction may be based on the uncorroborated testimony of the victim unless the story is physically impossible or so incredible that no reasonable person could believe it").

¶27      The record also supports the trial court's finding that there was sufficient evidence for the jury to conclude Herrera had created all the videotaped images of A.M. As Herrera concedes, A.M. identified herself in the videotape segments depicting her breasts and in the derived images. Both she and her mother identified Herrera's voice directing her to jump up and down in a portion of the videotape. The trial court found

that A.M.'s identification provided clear and convincing evidence the videotape segments and still images depicted her and were made by Herrera. Herrera argues the videotape segments do not "show who was holding the camera," but A.M. testified that Herrera was the only person who had ever filmed her while she was naked.

¶28 Next, Herrera argues the Yuma Acts did not provide a reasonable basis to infer the character trait of sexual propensity, as required by Rule 404(c)(1)(B). The trial court found that Herrera's aberrant sexual propensity could be inferred from the evidence that while in Yuma, Herrera "had his 11-13 year old step-daughter masturbate him." The court added that the evidence supporting the inference included the videotape segments and still images of the victim. Herrera argues the evidence was insufficient, however, because the Yuma Acts "were limited to one type of act, occurred only a few times, and were not significant enough to report." However, "evidence of a prior similar sex offense committed against the same child" may show "the defendant's lewd disposition or unnatural attitude toward the particular victim." *State v. Garner*, 116 Ariz. 443, 447, 569 P.2d 1341, 1345 (1977); *see also State v. Garcia*, 200 Ariz. 471, ¶ 29, 28 P.3d 327, 332 (App. 2001). Although Herrera also asserts the videotape segments did not provide a sufficient basis for inferring he had an aberrant sexual propensity to commit the charged offense, he supports this argument only by reiterating his claim that there was insufficient evidence he had made the videotape.

¶29 Herrera lastly contends the trial court erred in finding the other-acts evidence satisfied the third step of the screening required by Rule 404(c), arguing the evidence was "needlessly cumulative, . . . confusing, and add[ed] nothing but unfair

16

prejudice." But the court found the Yuma Acts "provided historical context to the charged sex crimes" because "[t]he sequence of escalating sexual contact was important."[9] It also found the evidence related to "[a] major issue at trial," which was A.M.'s delay in reporting the charged offenses that subsequently were committed in Vail. The court noted the victim had testified that when she and Herrera were in Yuma, he had told her the acts that had occurred there were "'okay'—provided 'no one found out.' However, without testimony about the Yuma [A]cts, the jury would not have been able to fully assess the impact the warning had on the Victim." These findings are supported by the record and the court did not abuse its discretion by finding the evidence was relevant to primary issues in the case.

¶30 We also reject Herrera's argument that the videotape and image exhibits failed the third part of the Rule 404(c) analysis because they were "dissimilar to the crimes in question" and did not show "overt sexual behavior with another person." The acts depicted involved nudity and sexually explicit statements and portrayed the same victim as the charged acts. As the trial court correctly concluded, the nature of the evidence was not such that it suggested to the jury it should determine Herrera's culpability on an improper basis, such as an emotional one. The court noted in that regard the Yuma Acts were "less egregious" and the images "less graphic and less

---

[9]Relying on *Ferrero*, Herrera implies the trial court erred by basing its determination that the evidence was admissible in part on its finding that the Yuma Acts "complete[d] [the] story" of the charged acts. We disagree. In *Ferrero*, the supreme court did not hold that evidence of other acts offered to complete a story cannot be found to be relevant; rather, the court held that such evidence is not necessarily admissible solely because it is intrinsic to the charged crimes. 229 Ariz. 239, ¶ 20, 274 P.3d at 513.

17

inflammatory" than the charged acts. The record supports the court's findings and its conclusion that the probative value of the evidence was not substantially outweighed by any risk of undue prejudice to Herrera.

¶31 Herrera also contends the other-acts evidence was misleading because the jury could have confused the standard of proof necessary to establish those acts with the standard applicable to the charged acts. However, the trial court instructed the jury that although it could find Herrera had a character trait that predisposed him to committing the charged crimes if the state proved the other acts by clear and convincing evidence, "[e]vidence of the[] acts d[id] not lessen the State's burden to prove [Herrera]'s guilt beyond a reasonable doubt as to any given charge." The instructions also clarified the jury could not "convict [Herrera] of the crimes charged simply because [it] find[s] that the defendant committed the other act or that he had a character trait that predisposed him to commit the crimes charged." We presume the jury followed these instructions, and Herrera has provided no reason to question whether it did so in this case. *See State v. Newell*, 212 Ariz. 389, ¶ 68, 132 P.3d 833, 847 (2006).

¶32 Moreover, the fact that the jury did not find Herrera guilty of all charges suggests it had not been so affected by the evidence of other acts that the guilty verdicts it rendered were the result of "emotion, sympathy or horror." *State v. Schurz*, 176 Ariz. 46, 52, 859 P.2d 156, 162 (1993); *see also United States v. Baker*, 10 F.3d 1374, 1387 (9th Cir. 1993), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053 (9th Cir. 2000); *Garcia*, 200 Ariz. 471, ¶ 42, 28 P.3d at 334. Based on the record before us, we conclude Herrera has not established the trial court abused its discretion in finding the

18

other-act evidence previously admitted as intrinsic was admissible under Rule 404(c). *See Villalobos*, 225 Ariz. 74, ¶ 18, 235 P.3d at 233.

¶**33**     The last class of other-acts evidence Herrera challenges is the testimony of Detective John Mawhinney, a computer forensic examiner, about photographic images found on the hard drive of Herrera's personal computer.[10]   Herrera did not object to Mawhinney's general testimony regarding the computer hard drives taken from Herrera's home pursuant to a search warrant.  When Mawhinney testified that one drive removed from Herrera's home computer contained "more than—thousands [sic]" of photographic images, Herrera objected solely on the ground that the question called for speculation. On cross-examination, Herrera's counsel asked Mawhinney if "around 17,500" photographs of naked women had been found on the hard drive.  Additionally, Herrera did not object when the state asked on redirect whether those 17,500 photographs included "hundreds, if not a thousand, images of female [genitalia]."  On appeal, Herrera contends the trial court committed fundamental error by allowing the state to elicit testimony about the "approximately 1,000 vaginal video images and to argue that those images were circumstantial evidence of guilt."

¶**34**     Because evidence that the photographic images depicted naked females first was introduced through testimony elicited by defense counsel, Herrera invited any error

---

[10]The state had not provided separate notice of its intent to introduce this evidence at trial.

19

and has no basis for challenging it.[11] *State v. Lindsey*, 149 Ariz. 472, 477, 720 P.2d 73, 78 (1986) ("'[A] party cannot complain about a result he caused.'"), *quoting* M. Udall & J. Livermore, Law of Evidence § 11 at 11 (2d ed. 1982). Likewise, when evidence is offered in response or retaliation to evidence offered by the opposing party, in general error will be deemed waived. *Id.* Here, Mawhinney, the state's witness, described the photographs only after defense counsel had asked questions about them. Because any error was invited, we do not address whether it was fundamental in light of defendant's failure to object. *Logan*, 200 Ariz. 564, ¶ 9, 30 P.3d at 632 ("If an error is invited, we do not consider whether the alleged error is fundamental . . . .").

## II. Propensity Instruction

**¶35** In his opening brief, Herrera argues that if the evidence was intrinsic, as originally found by the trial court, "and not subject to the protections of Rule 404(c), the State was not entitled to the propensity instruction given by the trial judge." He maintains "[t]he jury was not entitled to consider such evidence as character trait/propensity evidence without the trial judge making the appropriate findings under Rule 404(c)." Herrera is correct that a sexual propensity instruction is proper only if the other-acts evidence was admitted as sexual propensity evidence. *See Hargrave*, 225 Ariz. 1, ¶ 23, 234 P.3d at 578. Because Herrera did not object to the instructions,

---

[11]We disagree with Herrera's contention that the state failed to respond in its answering brief to his assertion of error regarding the hard-drive images, thereby conceding error. In its answering brief, the state addressed Herrera's argument that other-acts evidence was inadmissible on the ground that "proffered other-act evidence . . . was intrinsic evidence," and stated that "evidence of sexually explicit images found at Appellant's residence was also intrinsic."

however, we will reverse only if the challenged instruction constituted fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005); *see also State v. Simpson*, 217 Ariz. 326, ¶ 12, 173 P.3d 1027, 1029 (App. 2007).

¶36　　　　Herrera has not established the requisite prejudice under a fundamental error analysis. *See State v. Edmisten*, 220 Ariz. 517, ¶ 18, 207 P.3d 770, 776 (App. 2009) (even if court concludes fundamental error resulted from erroneous instructions, defendant must demonstrate reasonable probability jury would have reached different result but for erroneous instruction). As we previously concluded, although the court initially erred by admitting the evidence as intrinsic, it correctly found upon remand the evidence was admissible under Rule 404(c) as evidence of a character trait predisposing Herrera to commit the charged crimes. Herrera therefore is not entitled to relief for an instruction that explained the proper use of sexual propensity evidence. In addition, the jury was instructed "not to use the prior act evidence as a basis for convicting [Herrera] of the charges." *Hargrave*, 225 Ariz. 1, ¶ 24, 234 P.3d at 578.

## III.　Preclusion of the Victim's Prior Sexual History

¶37　　　　Herrera next asserts the trial court erred by precluding him from introducing evidence about A.M.'s prior sexual history, specifically an allegation that she had engaged in a consensual sexual relationship with a female friend. Additionally, he argues he should have been permitted to introduce evidence that after A.M. had disclosed Herrera's sexual abuse, she had told a friend she had had sex with her boyfriend. He argues this evidence was admissible under A.R.S. § 13-1421(A), and that the state

"opened the door" to such evidence. Alternatively, Herrera argues § 13-1421 is unconstitutional.

### a. Admissibility under § 13-1421

¶38 We review a trial court's decision to preclude evidence under § 13-1421 for an abuse of discretion. *See State v. Gilfillan*, 196 Ariz. 396, ¶ 29, 998 P.2d 1069, 1078 (App. 2000). Section 13-1421, commonly referred to as the "rape-shield law," provides that evidence of specific instances of a victim's prior sexual conduct are admissible only if the judge "finds the evidence is relevant and is material to a fact in issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value of the evidence." Here, Judges Campoy and Cahill both found the evidence irrelevant and of little or no probative value. We agree.

¶39 Relying on *State v. Trotter*, 110 Ariz. 61, 514 P.2d 1249 (1973), and *State v. Roberts*, 139 Ariz. 117, 677 P.2d 280 (App. 1983), Herrera argues that A.M.'s sexual history was relevant to her credibility. But, neither case supports his position. In *Roberts*, the issue was the admissibility of expert testimony suggesting a witness might have been unreliable because of a mental deficiency. 139 Ariz. at 123, 677 P.2d at 286. *Trotter* dealt with a prosecutor's comment about witness credibility during closing arguments. 110 Ariz. at 65, 514 P.2d at 1253. Neither case implicated § 13-1421, which dictates the circumstances under which specific instances of a victim's prior sexual conduct may be admitted.

¶40 Here, as we previously stated, both Judges Campoy and Cahill found that the proffered evidence was irrelevant and immaterial to any facts at issue. "The trial

22

court was in the best position to evaluate the evidence and judge the credibility of the witnesses." *Gilfillan*, 196 Ariz. 396, ¶ 33, 998 P.2d at 1078. At a preliminary hearing on the issue, Judge Campoy found "no legal basis or evidentiary relationship between the alleged prior relationship with a same-sex partner and the issue involved in th[e] case." When defense counsel tried to introduce the evidence at trial, arguing that the state had "opened the door," Judge Cahill stated, "it's just wild speculation that any of these acts . . . would have any relevance." We find no error in the determinations that Herrera failed to establish that A.M.'s alleged prior sexual conduct was admissible.

¶41　　　　Herrera seems to suggest the state opened the door to his use of this evidence to impeach the victim. This argument apparently is based on the prosecutor's question to A.M.: "these things that you told us about that your stepfather did . . . [d]id any other person ever do these types of things to you?" First, we agree with the trial court that even if "the door is open . . . [it does not] mean you have the evidence to go through it." Section 13-1421(A)(4) provides that one permissible use of the victim's prior sexual history is "impeachment when the prosecutor puts the victim's prior sexual conduct in issue." But the statute also states that before admitting such evidence, a judge must find it relevant and "material to a fact in issue in the case," and that its "inflammatory or prejudicial nature . . . does not outweigh its probative value . . . ." § 13-1421(A). Judge Cahill noted that the defendant "ha[d] to have something more" to establish a connection between the alleged sexual activity and the crimes charged and that there was "no good-faith basis" to admit the evidence. Additionally, we are not convinced in any event that the state opened the door to such evidence. Rather, the

23

prosecutor's question apparently was an attempt to address Herrera's suggestion that his and his wife's "swinging partners" could have engaged in sexual conduct with or involving the victim.[12]

### b. Constitutionality of § 13-1421

¶42      Herrera contends § 13-1421 is unconstitutional because it violates his right to confront and cross-examine witnesses, violates the constitutionally mandated separation of powers between the legislature and courts, and infringes upon our supreme court's rulemaking powers. Herrera concedes he challenges the constitutionality of the statute for the first time on appeal, but asserts the issue is of such importance that we should address it. We may consider constitutional arguments raised for the first time on appeal. *See Gilfillan*, 196 Ariz. 396, n.4, 998 P.2d at 1074 n.4. However, the arguments Herrera raises were considered and rejected in *Gilfillan*, and we see no reason to deviate from that decision. *See State v. Benenati*, 203 Ariz. 235, ¶ 7, 52 P.3d 804, 806 (App. 2002).

## IV.    Expert Witness Testimony

¶43      Herrera's final argument is that the state's expert witness improperly invaded the province of the jury and improperly vouched for the victim, denying him a

---

[12]In opening statement, Herrera's counsel stated, "with all the swinging activity going on in that house, and people so wigged out and high on drugs and passing out in God knows what part of the house, it could have been anyone grabbing a camera and taking photographs." A.M.'s mother testified that throughout their marriage, she and Herrera engaged in sexual activity with other partners, men and women, in their home and Herrera always was "filming and directing" the activity. Although the victim testified Herrera told her about his "swinging" activities, she also testified she never was present when they occurred.

fair trial. Wendy Dutton, a forensic interviewer, testified for the state as an expert on the behavior and characteristics of child sexual abuse victims. On direct examination, Dutton stated that false allegations occur most commonly when the purported victims are either "younger children whose parents are involved in a high-conflict divorce or custody dispute" or "adolescent females." For adolescent females, she also stated that, false allegations are usually driven by an "ulterior motive or secondary gain." On cross-examination, defense counsel focused on rates of false allegations among adolescent females asking, "Now, you had mentioned earlier that teenage girls are the most likely group of children to make false allegations of sexual abuse. Did I say that correctly?" Dutton disagreed with this characterization of her prior testimony.

¶44      Before the witness was excused, the jury was permitted to submit proposed questions. Neither party objected to any of the proposed questions. The trial court then read two of the jurors' questions to Dutton, "What percentage of allegations later prove to be false?" and, "What are the statistics of stepparents abusing stepchildren?" During recross-examination, Dutton concurred with defense counsel's statements that "[t]here may be any number of allegations that are never actually proven [false or] otherwise." Herrera did not object to Dutton's testimony at any point during direct or cross-examination. Even though Dutton herself stated, "I'm not sure I'm allowed to answer that question," Herrera did not object to the jurors' questions or the answers provided.

¶45      The state concedes that testimony about the specific percentage of false sexual abuse allegations and the most common type of perpetrators of sexual abuse was error under the standard established in *Lindsey*, 149 Ariz. at 475, 720 P.2d at 76 (courts

should not admit expert testimony related to credibility of "witnesses of the type under consideration"). But, it argues, Herrera's failure to object to the testimony constituted invited error. Because failure to object alone does not invite error, we reject this argument. *See State v. Lucero*, 223 Ariz. 129, ¶ 22, 220 P.3d 249, 256 (App. 2009).

¶46 By failing to object below, however, Herrera has forfeited the right to seek relief for all but fundamental, prejudicial error. *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607. Although we will not ignore fundamental error when we see it, *State v. Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d 641, 650 (App. 2007), Herrera must show "both that fundamental error exists and that the error in his case caused him prejudice," *Henderson*, 210 Ariz. 561, ¶ 20, 115 P.3d at 607. *See also State v. Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d 135, 140 (App. 2008) (failure to argue error not raised below was fundamental waives argument). Herrera relies on *Lindsey* for the proposition that Dutton's testimony denied him his right to a fair trial. The expert witness in *Lindsey* had testified "[there was] a preponderance of the evidence" the victim was telling the truth. 149 Ariz. at 477, 720 P.2d at 78. Our supreme court disapproved of such testimony, holding that "trial courts should not admit direct expert testimony that quantifies the probabilities of the credibility of another witness." *Id.* at 475, 720 P.2d at 76. The court added that "experts should not be allowed to give their opinion of the accuracy, reliability or credibility of a particular witness in the case being tried" or "witnesses of the type under consideration." *Id.* None of Dutton's testimony dealt with the veracity of this particular victim. In response to the jurors' questions, however, she testified that stepfathers are often the perpetrators and that "false allegations occur less

26

than [ten] percent of the time," which did quantify the credibility of "witnesses of the type under consideration." *Id.* Although in *Lindsey* the court found similar expert testimony to be prejudicial, the case before us is distinguishable. Unlike the expert in *Lindsey*, Dutton testified she had no knowledge of the particular facts and circumstances of the case and had not met the victim. And, Dutton acknowledged that children lie about sexual abuse—sometimes for secondary gain—which was the defense presented here. Thus, viewed in its entirety, the testimony did not tell the jury "who is correct or incorrect, who is lying and who is truthful." *Id.* at 474, 720 P.2d at 75.

¶47        As the supreme court recognized in *Lindsey*, "testimony . . . which falls short of an opinion about the specific witness before the jury . . . might not be prejudicial error in a case in which there was ample extrinsic evidence of guilt." 149 Ariz. at 476-77, 720 P.2d at 77-78. Herrera argues that "the evidence of [his] guilt was not overwhelming" and that the case turned solely on the issue of A.M.'s credibility. We disagree and conclude there was "ample extrinsic evidence of guilt." *Id.* Although there was no medical evidence that corroborated the victim's testimony, the evidence included numerous photographs and videotapes and testimony of other witnesses in addition to A.M. Furthermore, Dutton's testimony was not the only information upon which the jury could rely to assess A.M.'s credibility. A.M. provided lengthy and detailed testimony, the credibility of which the jury could determine for itself.

¶48        The trial court also instructed the jurors properly that they were not bound by any expert opinion and should give an opinion only the weight they believed it deserved. We presume they followed this instruction. *See State v. LeBlanc*, 186 Ariz.

437, 439, 924 P.2d 441, 443 (1996). And Herrera's acquittal on two counts undercuts his argument that the error here meant "defendant could not possibly have received a fair trial." *Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607; *cf. Garcia*, 200 Ariz. 471, ¶ 42, 28 P.3d at 334. Therefore, although Dutton's testimony about the percentages of false accusations and rate of stepfather perpetrators was improper, Herrera has failed to establish that her testimony resulted in fundamental, prejudicial error, entitling him to relief. *See Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607.

## Disposition

**¶49**      The convictions and sentences imposed are affirmed.

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Presiding Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Judge

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge