NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JAMES GODREY MORPHIS, III, *Appellant*.

No. 1 CA-CR 18-0177
FILED 8-8-2019

Appeal from the Superior Court in Maricopa County
No. CR2016-126427-001
The Honorable Dean M. Fink, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

DM Cantor, Phoenix
By Christine Whalin, Jazmyn Taitingfong
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge David D. Weinzweig joined.

---

**H O W E**, Judge:

¶1          James Godrey Morphis, III, appeals his convictions and sentences for 14 crimes consisting of sexual abuse, child molestation, and sexual conduct with a minor. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509 ¶ 93 (2013). Morphis lived with his girlfriend and her daughter, M.M. On June 1, 2016, shortly after M.M. turned 12 years old, Morphis picked her up from "summer camp" at a local school and took her to a clothing store. When they arrived home, M.M. locked herself in her room because she was "scared" that something "was going to happen." She later informed her mother that Morphis had been touching her inappropriately, and her mother called the police. M.M. underwent a forensic interview and medical examination on June 2.

¶3          During the forensic interview, M.M. stated that she was about nine years old when Morphis started to touch her private parts. He would put his hand up her shirt and touch her "chest." He would also put his hand in M.M.'s pants and rub "on the outside[] with his hands[,]" but did not "put his finger inside" her vagina. She stated that he "started to do more things" when she turned 11 years old. For example, one night while M.M. was sleeping in her room, Morphis went naked into her room and pulled down her shorts and underwear. He then touched M.M. with his "private area" and then put it "inside" of M.M.'s "private area." M.M. stated that Morphis "basically" had "sex with [her]" and had done so more than once. The interviewer asked her to elaborate what she meant by "sex." M.M. replied that Morphis stuck his "private area into [her] pee private" and "then stuff came out, and it was in [her]." She then explained that the "stuff" was "white" and "creamlike." The interviewer asked M.M. to describe another time that Morphis had sex with her. M.M. did not describe an incident of penile-vaginal intercourse, but instead an incident where Morphis rubbed his penis on her butt. Afterwards, M.M. stated that

Morphis "licked" the inside of her "private area" on multiple occasions. She stated that the last time Morphis touched her inappropriately was on May 27, 2016.

¶4        M.M.'s mother made a "confrontation call" to Morphis, which the police recorded. She told Morphis that M.M. had claimed that he "stuck [his] thing in her thing." Morphis admitted that he had "touched [M.M.] inappropriately" and that he was "very ashamed." During the course of their conversation, Morphis stated that he had (1) "licked" M.M.; (2) put his fingers inside M.M.; (3) put his penis against M.M.'s vagina about three times, but did not put it in her vagina; (4) laid M.M. down on a bed after a shower and "licked" her; (5) put his finger in M.M.'s butt four to six times; (6) "licked" M.M. less than ten times; (7) put his fingers in M.M.'s butt or vagina eight times; (8) ejaculated one time while he put his penis against M.M.'s vagina, but not in it; (9) made M.M. rub his penis with her hands sometimes; (10) made M.M. "cum," usually with his tongue; (11) made M.M. "cum" with this tongue about three weeks ago; and (12) had sexual activity with M.M. 18 to 20 times.

¶5        Morphis stated that he had committed these acts with M.M. because of his "overwhelming desires," which he described as an addiction. After the confrontation call, Morphis sent M.M. a text stating, "I'm so sorry for everything I've done. I love you so much and I promise you, I will never touch you again. I hope some day you will be able to forgive me." M.M.'s mother sent Morphis a text stating that she loved him, and Morphis responded, "I don't know how you can. I hate myself."

¶6        Morphis was subsequently indicted for two counts of sexual abuse, seven counts of child molestation, and seven counts of sexual conduct with a minor. Under Arizona Rule of Criminal Procedure 15.1 and Arizona Rule of Evidence ("Rule") 404, the State disclosed that "[a]ny written or electronically recorded statements of any witnesses" and "[a]ny written or electronically recorded statements of the defendant" may be introduced into evidence.

¶7        Morphis was tried nearly two years later in February 2018. M.M. testified at Morphis's trial but stated that she could not remember details involving the sexual contacts on at least three different occasions during her testimony, and she omitted explanation of multiple charged acts. In contrast, during the recorded interview, M.M. supplied many more details concerning the charged acts. M.M. testified that she remembered the events better when she was interviewed and that she told the truth during the interview. The State subsequently asked to publish her recorded

interview to the jury. Morphis objected, arguing that M.M.'s recorded interview was not a "recorded recollection" under Rule 803(5). The court granted the request over Morphis's objection. Morphis objected once again, arguing that the interview presented evidence of "other acts" that were inadmissible under Rule 404. The trial court overruled the objection, however, finding that M.M.'s statements did not constitute evidence of other acts.

¶8        Morphis also objected to the admission of the confrontation call. Because he was charged with only 16 instances of sexual contact, he argued the other occasions discussed in the confrontation call constituted inadmissible other-acts evidence under Rule 404. The trial court rejected his argument, ruling that Rule 404 did not apply because Morphis approximated the number of acts as opposed to specifically identifying other acts.

¶9        A detective who searched Morphis's phone after his arrest testified that he discovered that the text message sent to M.M. expressing regret over his actions was not in the phone's memory. The detective testified that a possible explanation for the missing message was that it had been deleted. The State consequently requested a concealment jury instruction. Over Morphis's objection, the court granted the State's request. The court instructed the jury that

> you may consider any evidence of the defendant's . . . hiding[]
> or concealing evidence, together with all the other evidence
> in the case. (You may also consider the defendant's reasons
> for . . . hiding[] or concealing evidence.) . . .

¶10       During trial, Morphis requested that the court instruct the jury that sexual interest was an element of the charged offenses. The court denied his request. Morphis moved for a judgment of acquittal, and the court granted Morphis's motion on two charges for sexual conduct with a minor. After trial, the jury convicted Morphis of the remaining charges. He was sentenced to five consecutive terms of life in prison. Morphis timely appealed.

## DISCUSSION

¶11       Morphis argues that the trial court erred by (1) admitting in evidence M.M.'s recorded interview as a "recorded recollection[,]" (2) failing to exclude M.M.'s recorded interview statements and the confrontation call because they contained evidence of "other acts" that were inadmissible under Rule 404(b)–(c), (3) denying his motions for directed

verdicts based on insufficient *corpus delicti*, (4) instructing the jury on flight or concealment, and (5) not instructing the jury that sexual interest was an element of the offenses.

**1. The Recorded Interview Was Admissible as a Recorded Recollection Under Rule 803(5).**

**¶12** We review a trial court's evidentiary ruling for an abuse of discretion. *State v. Sanders*, 245 Ariz. 113, 128 ¶ 58 (2018). Under Rule 803(5), a recorded recollection may be read into evidence if the recording is (1) on a subject that the witness once knew about but now cannot remember well enough to testify fully and accurately, (2) was made by the witness when it was fresh in the witness's memory, and (3) accurately reflects the witness's knowledge.

**¶13** Here, all three factors were sufficiently met. M.M. testified that she could not remember details involving the sexual contacts on at least three different occasions, and she omitted explanation of multiple charged acts. M.M. also struggled to answer questions regarding the allegations against Morphis. During the recorded interview, M.M. gave many more details concerning the charged acts. Regarding the freshness of her memory, M.M. testified that she remembered the events better when she was interviewed. Regarding the accuracy of her recorded recollection, she stated that she told the truth during the interview. The testimony she provided also coincided with the statements she made during her recorded recollection, bolstering the accuracy of the recorded recollection. Thus, the publication of the recording was not an abuse of discretion.

**¶14** Morphis contends that the State should have tried to refresh M.M.'s memory with the forensic interview before seeking to admit it. But Rule 803(5) does not require an attempt to refresh. *See State v. Salazar-Mercado*, 234 Ariz. 590, 592 ¶ 4 (2014) ("If a rule's language is plain and unambiguous, we apply it as written without further analysis.") Despite this, Morphis relies on *State v. Ortega*, 220 Ariz. 320 (App. 2008) to support his position. In *Ortega*, this Court stated that "[i]f the attempt to refresh the witness's recollection [under Rule 612] is unsuccessful, the writing may then be read into the record [under Rule 803(5)], although it may not be separately admitted into evidence." *Id.* at 330 ¶ 33. Rule 803(5) was not at issue in *Ortega*, and it did not hold that in addition to the requirements outlined in Rule 803(5), an additional, unwritten requirement to refresh also exists. Thus, the cited language is nothing more than nonbinding dicta. In contrast, this Court in *Goy v. Jones* allowed the reading of a police officer's report to a jury under Rule 803(5) even though the record did not show that

anyone had attempted to refresh the testifying witness's recollection before reading the report. 205 Ariz. 421, 422–24 ¶¶ 4–11 (App. 2003). This argument is therefore unpersuasive.

**¶15** Morphis next argues that the court erred when it concluded that Rule 803(5)'s freshness prong was satisfied because the interview included events that were three to five years old. The trial court had a sufficient basis to find that the events were fresh in M.M.'s mind when she was interviewed. The record shows that M.M. testified that the last time Morphis inappropriately touched her was on May 27, 2016, and the June 2 interview occurred less than a week later. Additionally, Rule 803(5) does not contain a time limitation regarding the freshness prong, and the trial court has broad discretion over this matter. *See United States v. Patterson*, 678 F.2d 774, 779 (9th Cir. 1982) ("Broad discretion for the trial judge is clearly intended under [Fed. R. Evid.] 803(5), as the advisory committee notes indicate: 'No attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate.'"); *see also State v. Alatorre*, 191 Ariz. 208, 212 ¶ 10 (App. 1998) (upholding the trial court's ruling admitting the victim's interview statements when "[t]he offenses occurred between November 1, 1994, and March 17, 1995[,]" and the interview occurred in "early April 1995"), *abrogated on other grounds by State v. Ferrero*, 229 Ariz. 239 (2012).[1]

### 2. M.M.'s Interview Statements and the Confrontation Call Were Admissible

**¶16** Morphis argues that the trial court abused its discretion in admitting M.M.'s interview because various statements in the interview were inadmissible "other acts" under Rule 404. Morphis also contends that the trial court abused its discretion in admitting the confrontation call. He argues that because he was charged with 16 specific instances of sexual contact but the confrontation call discusses other occasions of sexual

---

[1] Morphis also argues that because M.M. stated that the interview occurred on June 1 rather than June 2, the trial court could not be sure that M.M. testified to the same interview. The court noted, however, that "there [was] absolutely no basis . . . to believe that there was a separate interview done on June 1st" and that neither party could "offer any information to indicate there was a separate interview done."

contact, evidence of the other occasions constituted evidence of "other acts" that was inadmissible under Rule 404.[2]

¶17 Rule 404(b) provides that "[e]xcept as provided in Rule 404(c) evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(c) provides that other acts may be admitted in cases alleging sexual offenses "to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." To admit evidence of another act in sexual misconduct cases, the court must find that (1) the evidence is sufficient to allow the jury to find that the defendant committed the other act, (2) the other act provides a reasonable basis to infer that the defendant has a character trait showing a sexual propensity to commit the charged crime, and (3) the evidentiary value of the other act is not substantially outweighed by unfair prejudice. Ariz. R. Evid. 404(c)(1)(A)–(C). The evidence supporting a finding that a defendant committed the other act must be clear and convincing. *State v. Aguilar*, 209 Ariz. 40, 49 ¶ 30 (2004).

¶18 M.M.'s interview statements were admissible under Rule 404(c). She made statements that Morphis had committed sexual offenses against her, and those statements alone were sufficient to provide clear and convincing evidence that the acts occurred. *See State v. Vega*, 228 Ariz. 24, 29 ¶ 19 n.4 (App. 2011) ("The testimony of the victim is a sufficient basis on which to conclude by clear and convincing evidence that the incident occurred."). M.M.'s statements also provided a reasonable basis to infer that Morphis had a character trait giving rise to an aberrant sexual propensity to commit the charged sexual offenses because evidence of a prior similar sex offense committed against the same victim may show a defendant's sexual propensity toward the particular victim. *See State v. Herrera*, 232 Ariz. 536, 547 ¶ 28 (App. 2013). Further, the probative value of M.M.'s statements was not outweighed by the danger of unfair prejudice because they helped

---

[2] Morphis claims that M.M.'s interview statements and confrontation call were undisclosed Rule 404 character evidence. The record, however, shows that the State's disclosure under Arizona Rule of Criminal Procedure 15.1 disclosed both forms of evidence. The State's disclosure specifically stated that under Arizona Rule of Criminal Procedure 15.1 and Rule 404, the State gave notice that it "may introduce into evidence . . . any written or electronically recorded statements of any witnesses" and "any written or electronically recorded statements of the defendant." M.M.'s interview statements fell under "statements of any witnesses" and the confrontation call fell under "statements of the defendant."

establish Morphis's propensity to engage in sexual contact with M.M., supported M.M.'s limited ability to testify at trial, and supported her credibility. As such, the court did not err in admitting M.M.'s interview statements.

**¶19** Regarding the confrontation call, the record demonstrates that the requirements under Rule 404(c) were met. Concerning the proof supporting the acts, Morphis himself provided the evidence. M.M. also corroborated Morphis's statements. These sexual acts involved a prepubescent minor, indicating Morphis had a character trait giving rise to an aberrant sexual propensity. While Morphis argues that the admission of his statements caused unfair prejudice, we disagree. These other acts were similar to the charged offenses, frequent, and not remote in time. *See* Ariz. R. Evid. 404(c)(1)(C). The admission of these alleged other acts—albeit prejudicial—was not unfair. Thus, the court did not err in admitting the confrontation call.

### 3. Sufficient *Corpus Delicti* Existed to Use Morphis's Statements as a Basis for His Convictions

**¶20** Morphis argues that the court erred by not granting his request for directed verdicts for three counts that alleged oral-vaginal contact with M.M. after a shower, digital penetration of M.M.'s anus, and causing M.M. to touch his penis. He contends that his conviction for these counts were based on insufficient corroborating evidence. We review whether a court abused its discretion when ruling on the evidentiary sufficiency of *corpus delicti*. *State v. Carlson*, 237 Ariz. 381, 387 ¶ 7 (2015).

**¶21** To prevent convictions based solely on uncorroborated statements, the State—if it introduces a defendant's confession—must present evidence corroborating the confession. *Id.* at ¶ 8. "The standard for the corroborating evidence is not high." *Id.* The corroborating evidence must enable jurors to reasonably infer that the charged crime actually occurred. *Id.* Further, ". . . when a defendant confesses to several related crimes, independent evidence that establishes the commission of the closely related crimes may suffice to corroborate the confession as a whole . . . ." *Id.* at 388 ¶ 11.

**¶22** Here, Morphis confessed to committing—on multiple occasions—sexual abuse, child molestation, and sexual conduct with a minor. M.M. provided independent evidence that Morphis had committed all three types of crimes. Morphis, however, contends that these crimes are not sufficiently related because the crimes occurred over a number of years.

He cites two cases: *State v. Carlson*, 237 Ariz. 381 (2015) and *State v. Morgan*, 204 Ariz. 166 (App. 2002). Both opinions analyze whether crimes supported by independent evidence were closely related to the crimes the defendants had confessed to committing. *Carlson,* 237 Ariz. at 388–89 ¶¶ 11–14; *Morgan*, 204 Ariz. at 172–73 ¶ 23. These cases, however, do not support his argument. While the *Carlson* decision considered the crimes' temporal proximity, neither of the opinions held that crimes are not closely related unless committed in close temporal proximity to one another. 237 Ariz. at 388–89 ¶ 14; *see Morgan*, 204 Ariz. at 172–73 ¶ 23. In Morphis's case, the 14 crimes involved similar acts of sexual activity committed by the same person against the same victim, establishing that the crimes were closely related. Although the victim did not specifically mention the oral-vaginal contact after the shower and two other acts Morphis confessed to committing, her statements and testimony established the commission of closely related crimes. Therefore, his confession is corroborated as a whole.

### 4. The Court Did Not Abuse Its Discretion By Instructing the Jury on Concealment

**¶23** Morphis argues that insufficient evidence supported the concealment instruction because the detective testified on cross-examination that Morphis's text to M.M. might have disappeared from the phone's memory for innocent reasons. We review the provision of a jury instruction for abuse of discretion. *State v. Solis*, 236 Ariz. 285, 286 ¶ 6 (App. 2014).

**¶24** The court may provide a concealment instruction if the defendant's actions could be read as revealing a consciousness of guilt. *State v. Weible*, 142 Ariz. 113, 116 (1984). Here, the detective's testimony established that one explanation for the missing text message was that the message had been deleted. This evidence alone could be read to indicate a consciousness of guilt. Although Morphis argues that other non-incriminating reasons might have been present, an alternative explanation does not preclude the court from providing a concealment instruction. *See State v. Parker*, 231 Ariz. 391, 404 ¶ 50 (2013). The alternative explanation created a factual question for the jury to decide. *Id.* Thus, we find no error.

### 5. The Court Did Not Unconstitutionally Shift the Burden of Proof

**¶25** Morphis argues that the trial court's decision to not instruct the jurors that sexual interest was an element of the charged offenses was unconstitutional. We review questions of statutory interpretation and

constitutional issues de novo. *State v. Holle*, 240 Ariz. 300, 302 ¶ 8 (2016). Our supreme court has held that sexual interest is not an element of child molestation or sexual abuse. *Id.* at 304 ¶ 19. We are bound by that decision. *State v. Smyers*, 207 Ariz. 314, 318 ¶ 15 (2004). As for the other charges, sexual interest is not an element of sexual conduct with a minor. A.R.S. § 13–1405(A).

**¶26** Even if sexual interest were an element of the charged offenses, no reasonable juror could have concluded that the offenses were not committed with sexual interest. Morphis admitted he sexually touched M.M. numerous times, and he explained that the sexual contact was due to an overwhelming desire that resembled an addiction. Any possible error would have been harmless.

## CONCLUSION

**¶27** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA